[Crim. No. 3251. Second Appellate District, Division One.—September 29, 1939.]

THE PEOPLE, Respondent, v. ALFRED H. LOEHR, Appellant.

George W. Perkins for Appellant.

Earl Warren, Attorney-General, and Bayard Rhone, Deputy Attorney-General, for Respondent.

WHITE, J.—In an information filed by the district attorney of Los Angeles County defendant was accused of a violation of section 288a of the Penal Code. The information also charged a prior conviction of the same crime together with penal servitude in punishment therefor. Defendant entered a plea of not guilty, admitted the prior conviction charged and also that he served a term of imprisonment upon such conviction in the state penitentiary. Following a jury trial defendant was found guilty. From the judgment on the verdict and from the order denying his motion for a new trial defendant prosecutes this appeal.

A reversal is urged upon the single ground of the insufficiency of the evidence to justify the verdict. The victim of defendant's alleged felonious assault was a schoolboy of the age of fifteen years. No claim is made that the testimony of the boy, if capable of belief, is not alone sufficient to support the verdict, but in this behalf it is earnestly urged that the testimony of the complainant, when considered in the light of contradictions appearing therein, and alleged conflict with the testimony of other witnesses, must be held by this court to be so inherently unbelievable as to amount to no evidence at all.

Epitomized, the facts related by the complaining witness are that about 4 o'clock on the afternoon of February 6, 1939, he had occasion to visit the lavatory on the south side of the Coliseum in Los Angeles. He had not previously seen the appellant, nor did he observe him in the lavatory when he entered. When he entered, the boy testified, the appellant came up in back of him as he was walking toward the rear of the lavatory; that appellant grabbed him by the arm, held him, and then ripped open his trousers. The boy was carrying some schoolbooks in his left hand, and appellant grabbed him by the right arm. The victim then testified that the appellant pushed him in the corner of the lavatory and after ripping open his trousers committed the act charged in the information. The victim testified that appellant then released his grip, whereupon the boy ran out of the lavatory, at which time appellant called out, "I will see you later." On his way out the victim had not fastened his trousers, and some police officers, observing the boy and his demeanor, followed him, while another officer went into the lavatory and placed appellant under arrest.

From the testimony of the officer it appears that when he entered the lavatory after the exit of the boy appellant was sitting on the toilet coughing and spitting into the toilet bowl; that appellant then walked over to the wash basin, turned the drinking fountain on, and rinsed his mouth out with water two or three times, and finally wiped his mouth and hands with his handkerchief.

Appellant as a witness in his own behalf testified in substance that at no time did he commit the act with which he was charged; that he did not stop at any wash stand to rinse out his mouth or to spit; that he entered the lavatory to relieve himself, entering the toilet designated as compartment No. 1; that he had been in there probably a minute or two, and he heard the door open and someone entered in a hurry; that "they just barged in where I was sitting". Appellant further testified that when he looked up the complainant was standing right in front of him; that he looked at the boy "kind of surprised" and gave him a push away from him, whereupon the boy went back in the rear and out of appellant's sight. That the door opened and someone came part way into the lavatory, appellant being unable to distinguish who it was, as they did not come back to where he was sitting. Appellant further testified that as the boy went out the door he "kind of glanced" at appellant and whoever was in there at the time went out behind the boy. Appellant stated that while arranging his clothing he heard the door open and close twice and heard someone walking; that as he turned to go out one of the officers took him into custody.

In his brief appellant assigns as inherently improbable the testimony of the victim as to how the crime was committed, upon grounds thus stated:

"1. That the defendant would seize a sixteen-year-old boy in the presence of a witness sitting in No. 1 toilet bowl compartment, and drag him several feet to the rear of the lavatory. . . .

"2. That the defendant, having previously suffered a conviction for the same offense and knowing the consequences if apprehended, would attempt to commit the act charged by force and violence, in a room where there was a likelihood of other people entering, and in fact while there were at least three other men in the lavatory—the police officers and one civilian. . . .

"3. That neither the defendant nor the complaining witness would go through such an experience without saying something to the other. . . .

"4. That a sixteen-year-old boy of ordinary size, if so frightened that he could not say a word should still continue to hold in his hands the books (one large one and four or five smaller ones) and not drop them during the entire time that he was struggling to release himself. . . .

"5. That although the complaining witness was terrified to an extent that he testified he was, and still could have an erection as soon as the defendant started to open complaining witness's trousers. . . .

"6. That notwithstanding complaining witness's terrified state of mind, within from two to fifteen seconds after defendant opened complaining witness's pants and copulated his penis with defendant's mouth, that complaining witness had an emission. . . .

"7. That immediately upon leaving the lavatory, instead of complaining to the men standing just outside the door, he ran away from the scene and made no complaint (until) he had been questioned by police officers. . . .

"8. That the complaining witness, in passing out of the lavatory, could fail to observe police officer Blair, who testified that the boy walked right past him, and looked him right in the face in an apprehensive manner. . . .

"9. That all of the act could have happened in the space of one or two minutes and so quietly that the officers in the room would not have heard the struggle or the defendant yelling, 'I will see you later.' . . . "

 While the alleged variances or claimed inconsistencies, as well as the contradictions, appearing in the boy's testimony undoubtedly afforded opportunity for a persuasive argument to the jury against the reliability of his testimony, we find nothing in them from which a reviewing court could justly conclude that his entire testimony is *per se* unbelievable and that it was therefore the jury's duty not only to disregard it but to accept the defendant's denial of any wrongdoing on the latter's part. Obviously, reviewing judges are in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. It is undoubtedly for such reasons that our Constitution provides that appellate courts are not authorized to review evidence,

except where, on its face, it may justly be held that it is insufficient to support the ultimate issue involved, in which case it is not a review of a question of fact, but purely one of law. (*People* v. *Haydon,* 18 Cal. App. 543, 553 [123 Pac. 1102 1108].) With reference to when testimony may be strictured by an appellate court as unbelievable *per se,* it was said in the last-cited case: "A statement, to bear upon its face the brand of improbability, or which may be said to be unbelievable *per se,* must involve, we think, a claim that something has been done that it would not seem possible could be done under the circumstances described, or involve conduct that no one but a person of a seriously calentured mentality would be likely to do." Again, in regard to the power of the jury to minimize the value of appellant's testimony and the weight to be given it, we must remember that appellant was impeached through his admission of a prior felony conviction, which impeachment was made more effective by appellant's statement that his prior conviction was for the commission of the identical morals offense for which he was on trial.

Appellant's claim that the testimony of the young victim was most unusual is answered by the following language used in *People* v. *Collier,* 111 Cal. App. 215, 226 [295 Pac. 898] :

" . . . We understand that an appellate court can reject the positive testimony of a witness only when that testimony is 'inherently improbable'. *It is not sufficient that the testimony may disclose circumstances which are unusual.* Where the testimony is such that within the knowledge of reasonable men it cannot be true the appellate court might assume that knowledge and hold the testimony legally insufficient, but to do so the court must act on what is equivalent to judicial notice. . . . let it be said here that the appellate court does not sit as a jury to determine the issues of fact upon the credibility of the testimony of the witnesses but, when the attack is made on these grounds, it is necessary for the appellant to go further and show that the testimony which we are asked to reject is inherently improbable or that it was incompetent, or for some other reason, not legal evidence upon which the jury could rely." (Italics added.)

Bearing in mind the foregoing principles, we are not directed to, nor do we find anything in the record to justify this court in concluding from all the facts and circumstances here present that there was not sufficient legal evidence upon

which the jury could rely in determining that the offense charged was committed by the appellant. A reading of the entire record, instead of establishing an inherent improbability that the offense was committed, tends strongly to establish reasonable inferences of appellant's guilt.

The learned trial judge was extremely careful throughout the trial, both in his rulings and in questions propounded by him, to safeguard the rights of appellant to a fair and impartial trial. That was all he was entitled to, and that he received. Appellant was fairly tried, and his conviction rests upon competent and legal evidence.

The judgment and the order by which the motion for a new trial was denied are, and each of them is, affirmed.

York, P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 26, 1939.