[Crim. No. 5690. Second Dist., Div. One. June 13, 1957.]

THE PEOPLE, Respondent, v. HUGH CURTIS WILDER,
Appellant.

Hugh Curtis Wilder, in pro. per., for Appellant.

Edmund G. Brown, Attorney General, and Herschel Elkins, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendant was charged in two counts with violations of section 288 of the Penal Code. A prior conviction of a felony, issuing checks without sufficient funds, and for which defendant served a term of imprisonment in the state prison, was also alleged, and subsequently admitted.

Defendant pleaded not guilty, was tried before a jury and found guilty on both counts. The court found that defendant was not a sexual psychopath. His motion for a new trial was denied, as was his application for probation, and he was sentenced to state prison. From the judgment of conviction and from the order denying his motion for a new trial, defendant prosecutes this appeal.

Concerning the factual background surrounding this prosecution, the record reflects that for about a month prior to August 3, 1955, a young girl named Brita, age 11 years, and her brother Johnnie, age 10 years, had been visiting the home of defendant and the latter's wife often for the purpose of viewing television. The children had no television set at their home.

On August 3, 1955, between the hours of 2 and 3 p. m. Johnnie and Brita came to defendant's house and were admitted. Both defendant and his wife were at home. Johnnie,

Brita, defendant, and his wife watched television until sometime later in the afternoon when defendant's wife went into her room. Between the hours of 5 and 6 p. m., defendant asked Brita and Johnnie to go with him into the kitchen. Once there, he gave each a candy bar and asked Johnnie to leave the room and go back and watch television. Defendant then told Brita she had "a big stomach," a statement he had made earlier that afternoon, and asked her to sit on his lap. At the time, she was wearing a bathing suit covered by a shirt. Defendant put his hand on her stomach, then under her bathing suit between her legs, on her private parts, moving his hand around. He told her not to tell anyone what had happened. After she had so promised, defendant and Brita returned to the living room.

In the living room defendant gave money to Johnnie, told him to go and buy some ice cream, and sat on the couch beside Brita. While Johnnie was gone, defendant once more put his hand under Brita's bathing suit, on her private parts. During this time, defendant's wife was still in her room. At some time after 6 p. m., defendant and his wife took Johnnie and Brita home.

Brita told Johnnie what had happened and also told her 13-year-old sister, Eva.

Brita's oldest sister Mona, age 17, was at the beach during the first week of August and did not return home until about August 11, 1955. After returning from the beach, Mona met defendant, who drove her home, and asked her why Brita had not been over to see him "for a long time." Mona said she would ask Brita. That evening, in front of the whole family, Mona asked Brita why she had not been going to appellant's house. "She acted as if she were scared, and she said she would tell me later but she couldn't tell me right now." Later that evening, Brita told Mona what had happened on August 3. On August 12, Brita made a complaint to a deputy sheriff of Los Angeles County.

Testifying as a witness in his own behalf, defendant denied that at any time on August 3, 1955, he was alone with Brita in the kitchen of his home; that at no time did he ask Brita to sit on his lap, and that she did not do so. Defendant also denied that he touched the private parts of Brita or that he ever made the comment that she "had a large stomach." Defendant testified that he was the father of two children by a former marriage, one of whom was an adult and the other 10 years of age.

With reference to the visits made by Brita and Johnnie to his home, defendant testified that the children had become acquainted with his wife and asked if they "could come and watch television because they had none of their own." Defendant further testified that the children commenced coming to his house "along maybe in June" 1955, some two months before the date charged in the information. That Brita came "a few times a week; Johnnie came almost every day."

Mrs. Frances L. Wilder, wife of the defendant, testified she was employed at a residence across the street from where Brita and Johnnie lived. That by direction of the people by whom she was employed, the witness told Brita and Johnnie "not to come" to the home where the witness was employed. That "Brita got very angry and walked down the driveway and was quite angry, and she said, 'I hate her.' That was about me."

As to the date here in question, Mrs. Wilder testified she was at home when Brita and Johnnie came to her house. That during the afternoon she did retire to her bedroom "for a little rest." That at all times the door between the living room, where the children and her husband were, was open, that she and her husband took the children home and went into the house with them where Mrs. Wilder played the piano and defendant entertained with songs. That the mother of the children was there; that no complaint was made, and "everything was pleasant."

As his first ground for reversal of the judgment and order, appellant urges that the evidence is insufficient to sustain his conviction in that the complaining witness "told an incredible and uncorroborated story"; that she did not possess the mental capacity to understand or to answer simple and ordinary questions, and that the intent required under section 288 of the Penal Code was not established.

Giving consideration first to appellant's contention that the testimony of the prosecutrix was inherently improbable, it has often been reiterated by the courts of this state that before an appellate tribunal may reject statements made by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. Involved in the contention that testimony is inherently improbable and unworthy of belief is the claim that something has been done that would ordinarily have been impossible to have been done under the circumstances de-

scribed, or that the testimony involves conduct that no one in his right mind would be guilty of. (*People* v. *Thomas,* 103 Cal. App.2d 669, 672 [229 P.2d 836] ; *People* v. *Loehr,* 35 Cal.App. 2d 1, 5 [94 P.2d 390] ; *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758] ; *People* v. *Gardner,* 147 Cal.App.2d 530, 536-537 [305 P.2d 614] ; *People* v. *Stangler,* 18 Cal.2d 688, 691 692 [117 P.2d 321] ; *People* v. *Carr,* 113 Cal.App.2d 783, 786 [248 P.2d 977].)

 The rule is cogently set forth as follows in *People* v. *Collier,* 111 Cal.App. 215, 226 [295 P. 898] : ''We understand that an appellate court can reject the positive testimony of a witness only when that testimony is 'inherently improbable.' It is not sufficient that the testimony may disclose circumstances which are unusual. Where the testimony is such that within the knowledge of reasonable men it cannot be true the appellate court might assume that knowledge and hold the testimony legally insufficient, but to do so the court must act on what is equivalent to judicial notice. We are not advised of any precedent which would sanction our taking judicial knowledge of the extent of the acquaintance which must be had with the modern bootlegger before he could be asked to pay for protection. All the appellants devote much time and space in their attacks upon the credibility of the witness Smith, and lest they feel that their arguments have gone unnoticed let it be said here that the appellate court does not sit as a jury to determine the issues of fact upon the credibility of the testimony of the witnesses but, when the attack is made on these grounds, it is necessary for the appellant to go further and show that the testimony which we are asked to reject is inherently improbable or that it was incompetent, or for some other reason, not legal evidence upon which the jury could rely.''

 We shall not here repeat the testimony given by the complaining witness, and which we have hereinbefore narrated in detail. Suffice it to say that keeping in mind the foregoing rules, we cannot find in the testimony of Brita a narrative of facts and circumstances that would justify a declaration by this court that the verdict of the jury is barren of a sufficient foundation to uphold it.

Appellant directs our attention to certain inconsistencies in the testimony given by Brita at the preliminary examination and that given at the trial. He also points out the following which occurred during the cross-examination of the complaining witness in the court below:

"Q. Has anyone talked with you about the incident since you were in Court the last time, Brita? A. Talking about this thing?

"Q. Yes. A. Yes.

"Q. Who was it that talked to you about it? A. My mother.

"Q. Your mother? A. Yes.

"Q. Did talking with your mother help to make you more positive that this happened in the living room? A. Yes.

"Q. When you were talking with your mother about it, did she ask you questions or did you just discuss it? A. We just discussed it.

"Q. Did she tell you anything that you should say when you come to Court? A. She just said to tell the truth.

"Q. Have you discussed this with anyone else other than your mother and the policewoman? A. I don't understand.

"Q. Well, you talked about coming to Court and testifying with the policewoman, did you? A. It was a long time ago I talked to the policewoman. It was last year, a couple weeks after.

"Q. And you have also talked with your mother about it, is that right? A. Yes.

"Q. Have you talked with anybody else other than your mother and the policewoman? A. Well, our family.

"Q. Did you talk to any other police officers? A. Yes.

"Q. How many police officers have you talked to? A. Counting that woman?

"Q. Counting the woman, yes. A. I believe it was three, I think, or else it was two.

"Q. Two besides the first policewoman you talked to? A. It was either two besides or one besides her.

"Q. And you talked to them about coming to Court and testifying, did you? A. Yes.

"Q. And they told you to come in and tell the truth, is that right? A. Yes.

"Q. The same thing your mother told you? A. Pardon?

"Q. The same thing your mother told you? A. Yes."

While the alleged variances or inconsistencies in Brita's testimony and the showing that she had talked with her mother and certain police officers, undoubtedly afforded an opportunity for a persuasive argument to the jury against the reliability of her testimony, we see in them nothing from which a reviewing court could justly conclude that her entire testimony is *per se* unbelievable, and that it was therefore the jury's duty not only to wholly disregard it, but to accept

appellant's denial of improper conduct, or at least find that the latter's guilt had not been disclosed by the evidence to a moral certainty and beyond a reasonable doubt (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]).

As has often been repeated, reviewing judges are, obviously, in no position to determine the credit which should be accorded to witnesses or to weigh their testimony. The Legislature has ordained that the jury are the *exclusive* judges of the *credibility* of witnesses (Code Civ. Proc., § 1847), and are the judges of the *effect* or *value* of evidence addressed to them, except in those cases where it is declared by law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). And, as a necessary corollary to the above noted rules, the jury, in the instant case were authorized, if they conscientiously felt warranted in so doing, after full and fair consideration thereof to reject any testimony which might have been contradictory to that of the witness Brita, and therefore, to disbelieve the testimony of appellant and accept that of Brita as to the immediate circumstances of the charges herein made, however weak in places the latter's testimony may have been made to appear, or however sharply her testimony on other important points might have conflicted with the testimony of appellant and his wife.

Appellant's contention that Brita's testimony is unbelievable because of a week's delay on her part in making a complaint goes only to the weight of her testimony and that was within the province of the duly constituted arbiter of the facts (*People* v. *Healey*, 52 Cal.App. 563, 564 [199 P. 551]; *People* v. *Dutton*, 62 Cal.App.2d 862, 865 [145 P.2d 676]). However, the record reflects that she told her brother Johnnie almost immediately after the occurrence in question, and she advised her 13-year-old sister Eva on the night of such occurrence, or on the next day.

It is true, as urged by appellant, that portions of Brita's testimony were not corroborated, but in prosecutions of the kind before us corroboration is not required (*People* v. *Cox*, 104 Cal.App.2d 218, 219 [231 P.2d 91]; *People* v. *Raich*, 26 Cal.App. 286, 287 [146 P. 907]; *People* v. *Karpinski*, 43 Cal.App.2d 545, 548 [111 P.2d 393]; *People* v. *Westek*, 31 Cal.2d 469, 473 [190 P.2d 9]).

Appellant next complains that the prosecutrix did not possess sufficient capacity to testify in that she was unable

to comprehend or answer simple and ordinary questions. A reading of the reporter's transcript does not sustain appellant in this claim. At times, when she failed to understand questions propounded to her, Brita requested clarification thereof and her answers when finally given indicated an ultimate understanding of the questions propounded to her. And, section 1879 of the Code of Civil Procedure makes competent as witnesses "All persons, without exception, otherwise than is specified in the next two sections, who, having organs of sense, can perceive, and, perceiving, can make known their perceptions to others, . . . ." The next section, numbered 1880, refers to actions against estates; testimony of children under 10 years of age (Brita, the complaining witness, was 11 years of age); and testimony of a person of unsound mind. Section 1881 refers to testimony involving confidential communications. There has been no showing that the complaining witness is or was at the time of trial of unsound mind, and the other provisions of sections 1880 and 1881 do not apply to this case.

The law fixes no prescribed standard whereby to measure the mental competency to qualify one as a witness, and therefore, the determination is almost wholly within the discretion of the trial judge (*People* v. *Horowitz*, 70 Cal.App.2d 675, 696 [161 P.2d 833]; *In re Mazuran*, 88 Cal.App. 272, 277 [263 P. 339]). The trial judge in the case at bar conducted an examination of the child witness and therefrom, we think, justly concluded she possessed sufficient mental understanding to testify. In the absence of a showing of an abuse of the court's discretion, coupled with the fact that no objection was made to the witness on the ground of her incompetency, the contention cannot now be made the basis of a reversal (*People* v. *Singh*, 182 Cal. 457, 484 [188 P. 987]).

Insofar as the age of the witness is concerned (11½ years), cases reveal that girls aged 5, 6 and 8 were permitted to testify (*People* v. *Allen*, 131 Cal.App.2d 72 [279 P.2d 996]; *People* v. *Reeves*, 128 Cal.App.2d 410 [275 P.2d 158]; *People* v. *Carpenter*, 3 Cal.App.2d 746 [40 P.2d 524]; *People* v. *O'Connor*, 44 Cal.App.2d 301 [112 P.2d 279]; *People* v. *Norred*, 110 Cal.App.2d 492 [243 P.2d 126]).

Appellant next contends that there was no showing that the intent required by section 288 of the Penal Code, that of ". . . arousing, appealing to, or gratifying the lust

or passions or sexual desires of such person or of such child,'' were present in the instant case.

It is the circumstances connected with the offense by which the intent is manifested (Pen. Code, § 21; *People* v. *Owen,* 68 Cal.App.2d 617, 619 [157 P.2d 432]). In the case now engaging our attention however, appellant denies he committed the acts charged, and we are impressed that it cannot be reasonably said that the acts, which the jury found were committed, are of such a nature as to suggest that they could have been committed innocently.

Appellant next complains that the testimony of the witness Brita was elicited by means of leading questions which suggested the desired answers. Appellant particularly directs our attention to two questions as being leading, suggestive and self-serving. However, reference to the reporter's transcript reveals that both of these questions were propounded by appellant's counsel during the cross-examination of the complaining witness. It is true that some of the questions asked by the prosecution were somewhat leading and had objections been made thereto by appellant's counsel, the court might well have sustained them. ▮ An accused may not ordinarily remain silent and permit leading questions to be propounded and then for the first time complain of the evidence on appeal (*People* v. *Houston,* 88 Cal.App.2d 11, 17 [198 P.2d 53]; *People* v. *Simmons,* 28 Cal.2d 699, 723 [172 P.2d 18]). Section 2046 of the Code of Civil Procedure states the rule applicable in the case at bar as follows: ''On a direct examination, leading questions are not allowed, *except in the sound discretion of the court,* under special circumstances, making it appear that the interests of justice require it.'' (Emphasis added.) An examination of the record herein impresses us that in the absence of objection, the court did not abuse the discretion vested in it in determining the extent of such leading questions (*People* v. *Goff,* 100 Cal.App.2d 166, 169, 170 [223 P.2d 27]).

Appellant earnestly contends that the trial court committed prejudicial error in failing to instruct the jury to the effect that appellant could be convicted of contributing to the delinquency of a minor, a lesser and necessarily included offense (Welf. & Inst. Code, § 702). ▮ That the offense of contributing to the delinquency of a minor is necessarily included in the offense denounced by section 288 of the Penal Code is now well established (*People* v. *Greer,* 30 Cal.2d 589, 600 [184 P.2d 512]). ▮ Since no instruction on included

offenses was requested, appellant cannot now be heard to complain that none was given (*People* v. *Zabel,* 95 Cal.App.2d 486, 489 [213 P.2d 60] ; *People* v. *Nudo,* 38 Cal.App.2d 381, 384 [101 P.2d 162] ; *People* v. *Welsh,* 7 Cal.2d 209, 211 [60 P.2d 124] ). The rule is "that a judgment will not be reversed because the trial court had not instructed as to a lesser crime included in the greater one charged, unless the defendant had requested that the jury be so instructed" (*People* v. *Bailey,* 142 Cal. 434, 435 [76 P. 49] ). Appellant apparently relies upon section 1159 of the Penal Code, which provides: "The jury may find the defendant guilty of any offense, the commission of which is necessarily included in that with which he is charged or of an attempt to commit the offense." It has been held that what this section contemplates is the conviction of an accused of the lesser offense "when the evidence is insufficient to justify a conviction for the greater offense charged" (*People* v. *McCoy,* 25 Cal.2d 177, 194 [153 P.2d 315] ). In the case now before us, if appellant touched the prosecutrix in the manner she testified he did, such evidence was clearly sufficient to sustain the conviction of violation of section 288 of the Penal Code. Furthermore, in the case at bar, appellant's defense was not predicated on the theory that the acts charged against and committed by him might constitute such lesser offense. On the contrary, he denied the commission of any act which would amount to a violation of either the offense charged or any lesser offense necessarily included therein. Since appellant did not request an instruction to the effect that he might be convicted of the lesser offense, coupled with the facts elicited at the trial, and appellant's denial of the commission of any such acts, we are persuaded that no reversible error was committed by the court in failing to give, on its own motion, such instruction (*People* v. *Romersa,* 111 Cal.App.2d 173, 177 [244 P.2d 98] ; *People* v. *Bailey, supra,* p. 436).

Appellant directs our attention to the language of our Supreme Court in *People* v. *Putnam,* 20 Cal.2d 885, 889 [129 P.2d 367], that in cases of this kind "The defendant is entitled to have the jurors informed that the charges made against him are 'easily made and difficult to disprove,' and that 'the testimony of the prosecuting witness should be examined with caution.' " In that regard the record herein reveals that the court admonished the jury as follows: ". . . However, a charge such as that made against the defendant in this case is one which, generally speaking, is easily made, and,

once made, difficult to disprove even if the defendant is innocent. From the nature of a case such as this, the complaining witness and the defendant usually are the only witnesses. Therefore I charge you that the law requires that you examine the testimony of the prosecuting witness with caution.''

For the foregoing reasons, the judgment and the order denying defendant's motion for a new trial are and each is affirmed.

Doran, J., and Fourt, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 6, 1957.