[Crim. No. 6054. Second Dist., Div. One. Mar. 31, 1958.]

THE PEOPLE, Respondent, v. RAY VECK BARNETT, Appellant.

Harrison M. Dunham for Appellant.

Edmund G. Brown, Attorney General, and Herschel T. Elkins, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, the above named defendants†️ were charged with the crime of robbery in that they forcibly took from one Louis Bosola $75 on or about April 22, 1957. It was further alleged that at the time of the commission of the offense, the defendants were armed with a deadly weapon, to wit, a .22 caliber automatic pistol. Defendants pleaded not guilty, were tried before a jury and found guilty of robbery of the first degree. While the verdict as to defendant Barnett recites that the jury found he was armed at the time of his *arrest*, the court's minutes record that he was found to be armed at the time of the *offense*. However, none of defendant Barnett's substantial rights were prejudicially

affected by such variance (*People* v. *Beltran*, 94 Cal.App.2d 197, 208 [210 P.2d 238]). Defendant Barnett was sentenced to state prison. From the judgment of conviction, he prosecutes this appeal.

The following will serve as a fair summary of the factual background surrounding this prosecution.

Louis F. Bosola testified that he was the owner of a liquor store located at 1933 Ventura Boulevard, Tarzana, in Los Angeles County. That at about 12:50 o'clock on the morning of April 22, 1957 (the day following Easter Sunday) the defendant Barnett came into the store and ordered a package of Salem cigarettes. He gave Mr. Bosola a dollar bill and as Mr. Bosola gave him his change, the defendant pointed a gun at him and told him to give him all the money he had. Mr. Bosola asked the defendant if he wanted the silver and the latter said he only wanted the bills. After Mr. Bosola gave him the money, which amounted to $70 or $80, the defendant Barnett ordered him into the back room and made him lie on the floor. The defendant's gun was "on" Mr. Bosola during the entire proceedings. Defendant Barnett told Mr. Bosola, "Get down on the floor and stay there and don't try anything or I will be back."

Mr. Bosola gave the defendant the money because he was scared and because the appellant had a gun pointed at him.

At a later date Louis Bosola recognized the defendant Barnett in a police line-up. At the time of trial Mr. Bosola was positive that the appellant was the man who robbed him. Among other things, Mr. Bosola recognized the defendant's harelip, his dark brown hair, his height of 5 feet 9 inches and his weight of about 150 pounds. The witness stated that defendant's mustache had been a little thinner and a little darker than it was at the time of trial. On cross-examination the witness testified that the mustache of the intruder, "was a hairline type of mustache, straight across." That "it wasn't this walrus type that Mr. Barnett is wearing at the moment." The witness identified an automatic pistol, .22 caliber introduced in evidence at the trial as one that resembled or "looks like" the one defendant Barnett pointed at the witness on the occasion here in question.

About 9:30 o'clock on the evening of May 2, 1957, Frank J. Furgiuele, a police officer of the city of Beverly Hills, was operating a police patrol car when he observed a 1956 green Cadillac automobile pull up behind a motorcycle that he had observed had been parked at this location for several hours. That the motorcycle had a New Jersey license plate,

and since it was parked in a residential district he had been keeping it under observation. That he stopped his patrol car directly across the street from the motorcycle and the Cadillac and observed the driver of the Cadillac, defendant Lymn, get out of the car and go to the motorcycle. That he approached defendant Lymn and was told that the registration to the motorcycle was in the Cadillac, and the witness walked back with both defendants to the car. The witness put his flashlight in the window of the car and noticed a gun on the rear seat. He immediately placed the two defendants under arrest. The witness stated that defendant Barnett volunteered that they had another gun under the front seat, and after ' additional police units arrived, they searched the Cadillac and found a .32 caliber gun in the car, together with a "jumper wire," a bandana, a wig and some loose money in the glove compartment.

He testified that Barnett and Lymn were taken to the Beverly Hills Police Station, and while there, officers found that defendant Lymn was wearing a very narrow false "Hitler-type" mustache, straight across the upper lip. On cross-examination, the witness testified that the so-called "jumper wire" had only a clip on one end. When the contrivance was introduced into evidence it proved to be a battery-starting cable with clips on both ends.

On May 3d, at about 10:30 or 11 a. m., Officer Cork of the Beverly Hills Police Department and Sergeant Valentine of the Beverly Hills police had a conversation with the defendant Barnett. The latter's statements were free and voluntary. Sergeant Valentine told the defendant "I think you fellows have pulled a lot of jobs together, and it is our job to find out how many they are and where they are, and we want you to tell us about it."

Defendant Barnett said, "That is the funny part about it. There isn't a lot of jobs. There is only one." He further said that "The best he could remember, it was some time about the last week in April." He said that he and defendant Lymn were driving around in the valley near Ventura and Sepulveda at which time they spotted a liquor store. He said Lymn was driving and that they stopped in front or near the liquor store, that he took the gun, went in the liquor store, held the gun on the proprietor, and took $50 or $60. He then split the money with Lymn.

That same afternoon, defendant Barnett was interviewed by agents of the Federal Bureau of Investigation. His state-

ments were free and voluntary. He said that the only thing he was "mixed up in" was the robbery in the valley.

On May 4th, at about 2 to 3 o'clock in the afternoon, Officer Webb of the Los Angeles Police Department, attached to the detective bureau, was present at a conversation with defendant Barnett, whose statements were free and voluntary.

The latter stated that approximately two weeks before on a Monday at around 1 o'clock in the morning he and defendant Lymn had driven west on Ventura Boulevard a little ways past Balboa; they parked the car in front of a liquor store on the north side of the street; Lymn stayed in the car while Barnett went inside the store; upon entering the store, he asked the man behind the counter for a package of Salem cigarettes; the man gave him the cigarettes and he gave the man a dollar; when the man gave him the change for the purchase the defendant Barnett pulled the gun from his waistband and told the man he wanted all his money; when he started to give him the loose change, the defendant told him he only wanted the bills; after he obtained the bills he told the man to go to the back of the liquor store and he made him lie on the floor; he then walked out of the store and drove east on Ventura Boulevard.

On cross-examination the witness admitted that no stenographic record or tape recording was made of the conversation. Sergeant Murphy of the Detective Division, Los Angeles Police Department, was also present at the conversation just narrated and also testified that defendant Barnett told him that he had committed only one robbery. "The robbery that I told the Beverly Hills officers about."

The defendant Barnett also said he believed the robbery occurred on the 27th or 28th of April. Sergeant Murphy asked him if it would be the 22d or 23d and he stated it could have been. He told Sergeant Murphy that he and Lymn were riding around looking for a liquor store to hold up or some place to hold up and that they spotted a liquor store on Ventura Boulevard. He stated that when they pulled up in front of the store, defendant Lymn was driving his Cadillac and that he took a gun which he described as a .22 automatic, went into the liquor store, asked the clerk for a package of Salem cigarettes, offered to pay for the cigarettes with a dollar bill, and when the clerk rang up the purchase on the register and started handing him the change he took the gun from his waistband, pointed it at the clerk and asked him to give him all his money; the clerk asked if he wanted

change and the defendant Barnett stated, "No, just the bills"; after the clerk had handed the bills, he told him to turn around and start towards the back and he ordered him to lie down on the floor and remain there for a few moments. He said that he and Lymn counted the money and found that it was $69 or $70. None of defendant Barnett's statements were reduced to writing. Testimony as to similar incriminatory statements made by defendant Barnett was given by Officer Leonard M. Webb and Sergeant J. L. Austin of the Los Angeles Police Department.

Mr. and Mrs. Edward Bowers, called as witnesses for defendant Barnett, testified that on Easter Sunday, April 21, 1957, the latter came to their home, assisted Mr. Bowers in cleaning out the garage, had dinner with them, and about 9:30 p. m. complained of dizziness. Defendant Barnett was put to bed in their bedroom, and Mrs. Bowers changed a cold cloth applied to Barnett's head, four or five times during the evening, until both Mr. and Mrs. Bowers retired at approximately 1:30 a. m. on the morning of April 22d. (The robbery occurred about 12:50 a. m. on this morning.) Both witnesses further testified that defendant Barnett did not leave their home during the night or morning and was in bed when Mr. and Mrs. Bowers left for work around 6 o'clock in the morning. They were aided in their recollection of the occasion because it was Easter Sunday.

Two character witnesses who were well acquainted with defendant Barnett and with others who knew him, testified that his reputation in the community in which he resided, for "truth, honesty and good moral character" was very good.

As a witness in his own behalf, defendant Barnett testified that on the night of the alleged robbery he was at the home of the Bowers from approximately 6:30 p. m. on Easter Sunday, April 21, 1957 until the following morning, April 22, 1957, after the Bowers had gone to work. That he did not leave the Bowers' home at any time during the night of the alleged robbery.

He testified that on the night of his arrest, May 2, 1957, he had stopped by codefendant Lymn's house to exchange his .32 automatic for defendant Lymn's .22 automatic, as he was going on a motorcycle trip to the Colorado River to do some "plinking" (shooting at cans and bottles with a gun). That Lymn had asked him to ride to Beverly Hills with him to see if he could get Lymn's motorcycle started, as it had broken down that day. Defendant Barnett is a motorcycle mechanic.

That both guns were in plain view on the back seat of Lymn's Cadillac and both guns were unloaded. That he had the clip to Lymn's automatic which he was borrowing, in the pocket of his shirt.

Defendant Barnett testified that at the Beverly Hills police station a third person had implicated both Lymn and himself in the Bosola liquor store robbery, but Barnett denied any knowledge of the same. He further denied that he had ever confessed to any robbery to any officer.

As his first ground for reversal of the judgment, appellant earnestly urges that the evidence was insufficient as a matter of law to sustain his conviction. He recognizes the rule enunciated in the case of *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], that the court on appeal is not authorized to determine the weight of the evidence, but can determine only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. However, appellant relies upon the rule that when evidence is inherently improbable and therefore, unworthy of belief, it presents a question of law and when found to be of such a character, an appellate tribunal, in a criminal case, may reverse a conviction.

But, before an appellate court, on the ground of its inherent improbability, may reject the testimony given by witnesses, and which has been believed by the duly constituted arbiter of the facts, there must exist a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. (*People* v. *Stangler,* 18 Cal.2d 688, 691, 692 [117 P.2d 321]; *People* v. *Gardner,* 147 Cal.App.2d 530, 536 [305 P.2d 614]; *People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758].) Or, as was said in *People* v. *Carr,* 113 Cal.App.2d 783, 786 [248 P.2d 977]: ". . . The claim that testimony is inherently improbable and unworthy of belief involves a claim that something has been done that would ordinarily have been impossible to have been done under the circumstances described; or it involves conduct that no sane person would likely be guilty of." (See also *People* v. *Loehr,* 35 Cal.App.2d 1, 5 [94 P.2d 390]; *People* v. *Brown,* 100 Cal.App.2d 207, 209 [223 P.2d 60]; *People* v. *Thomas,* 103 Cal.App.2d 669, 672 [229 P.2d 836]; *People* v. *Wilder,* 151 Cal.App.2d 698, 702, 703 [312 P.2d 425].)

Viewed in the light of the foregoing rules, we cannot say that in the instant case the jury was required to disregard

the testimony of the victim of the robbery and that of the police officers, and to accept as true, the testimony of appellant and his alibi witnesses. Obviously, appellate justices are in no position to evaluate the credibility of a witness and the intrinsic value of evidence addressed to the triers of facts. For that reason the law has ordained that the jury are the sole and exclusive judges of the credibility of witnesses and the value and effect of the evidence addressed to them (Code Civ. Proc., § 1847), except in those instances where it is declared by the law that it shall be conclusive proof of the fact to which it relates (Code Civ. Proc., § 2061). (*People* v. *Haydon,* 18 Cal.App. 543, 554 [123 P. 1102, 1114].)

Appellant directs our attention to claimed variances and inconsistencies in the testimony of Mr. Bosola in his identification of appellant as the perpetrator of the crime. While these contentions afforded an opportunity for argument to the jury in the first instance and to the trial court on motion for a new trial, they are unavailing on appeal unless we can say, as a matter of law, that there was no substantial evidence to support the verdict. It is the function of the jury to pass upon the strength or weakness of the identification and the uncertainty of the witnesses, if any, in giving their testimony (*People* v. *Shaheen,* 120 Cal.App.2d 629, 636 [261 P.2d 752] ; *People* v. *Quijada,* 124 Cal.App.2d 422, 424 [268 P.2d 745] ; *People* v. *Johnson,* 21 Cal.App.2d 673, 674 [70 P.2d 198] ). Furthermore, the identification testimony of the victim was supported by admissions or confessions made by appellant to various police officers concerning his participation in the crime.

Appellant insists that the testimony of Mr. and Mrs. Bowers that he was in bed at their house during the time of the robbery was not impeached. But, as heretofore pointed out, the verity of this testimony was a question primarily for the jury (*People* v. *Sotelo,* 102 Cal.App. 688, 690 [283 P. 388] ; *Huth* v. *Katz,* 30 Cal.2d 605, 609 [184 P.2d 521] ; Code Civ. Proc., § 1847). By their verdict, the jury indicated their unwillingness to believe the testimony of appellant's alibi witnesses, and under the pronouncements set forth in *People* v. *Newland, supra,* p. 681, we are without authorization to reweigh it.

Appellant further argues that his claimed admissions should have been viewed with caution because no stenographic record or tape recording was made of them. This claim goes rather to the weight than to the admissibility of such testi-

mony, and under familiar rules, presented a question of fact for determination by the jury.

Appellant's final contention that his arrest was illegal and in contravention of his constitutional rights is unavailing for two reasons. First, at no time during the trial was any objection made to the introduction of any evidence on the ground now asserted, and any such objection is therefore deemed waived (*People* v. *Close,* 154 Cal.App.2d 545, 551 [316 P.2d 1019]; *People* v. *Kitchens,* 46 Cal.2d 260, 262 [294 P.2d 17]). Such an objection must be made at the trial in order to afford the prosecution opportunity to present fully the facts and circumstances surrounding the arrest, so that the court could rule as to whether reasonable or probable cause existed for the arrest and subsequent search or seizure. Secondly, we entertain no doubt from a perusal of the record, that the trial court could reasonably have allowed into evidence the two weapons found in the automobile, even though timely objection had been interposed. It would unduly prolong this opinion to again narrate the testimony concerning the apprehension of appellant. Suffice it to say that the circumstances related by the officer without doubt authorized him to question appellant and his codefendant, and when the officer saw the .22 caliber pistol on the top of the rear seat of the automobile, investigative action was warranted and within the scope thereof the officer was entitled to take the weapon. This weapon was not taken as the result of a search, for ". . . A search implies a prying into hidden places for that which is concealed and that the object searched for has been hidden or intentionally put out of the way. . . ." (*People* v. *West,* 144 Cal.App.2d 214, 219-220 [300 P.2d 729].) (See also *People* v. *Ambrose,* 155 Cal.App.2d 513, 522 [318 P.2d 181].)

As to the second weapon, appellant voluntarily advised the officer that it was secreted under the front seat of the vehicle (a violation of Pen. Code, § 12025). Thereupon, the officer searched the vehicle and found the .32 caliber revolver. Appellant's incriminatory statement to the officer was not coerced. He was not obligated to make a statement and could have remained silent. Appellant having told the officer that he was, in effect, committing a crime, his contention now that the officer's subsequent actions were unwarranted lacks substance.

For the foregoing reasons, the judgment is affirmed.

Fourt, J., and Lillie, J., concurred.