[Crim. No. 12879. Second Dist., Div. Four. Nov. 4, 1968]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT RONALD BARRETT et al., Defendants and Appellants.

Robert Ronald Barrett and Foster Victor Falcon, in pro. per., Gilbert F. Nelson and Morgan R. Rodney, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Elizabeth Miller and Robert F. Katz, Deputy Attorneys General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendants were charged with two counts of armed robbery. It was alleged that Falcon had suffered a prior felony conviction of the crime of robbery and conspiracy with intent to commit robbery, and it was alleged that Barrett had suffered a prior felony conviction of the crime of burglary on two occasions and the crime of possession of narcotics.

A public defender was appointed. On Barrett's motion, attorney A. Bryon was substituted as to him in place of the public defender. Each entered a plea of "not guilty" and denied the prior convictions. Motion of counsel to be relieved as to Barrett was denied without prejudice. Defendant Falcon's motion for separate trials was denied.

A jury was impaneled and sworn to try the cause. On Barrett's motion, all witnesses, with the exception of the investigating officer, were excluded from the courtroom.

The jury found both defendants guilty of robbery as charged in counts I and II, the degree was set at first degree, and the defendants were found to be armed at the time of both offenses. The jury found the prior conviction alleged against Falcon to be true, and the first, third and fourth prior convictions against Barrett to be true.

Defendants' motions for new trials were denied, probation was denied, and defendants were ordered punished for the term prescribed by law, the sentences on counts I and II to run consecutively.

On October 30, 1965, at about 5:30 p.m., Mr. Gordon, a pharmacist at the Union Service Plan Pharmacy, was typing a label when Falcon came in wearing a stocking over his face and waving a gun. He told Mr. Gordon, "This is an holdup,"

and he demanded narcotics, specifically naming Dilaudid, morphine and cocaine. Mr. Ron Terry Kemp, another employee of the pharmacy, saw a man, Falcon, with a black stocking mask over his face. Falcon, seeing Kemp trying to leave said, ''Get back over here or you're dead.'' The stocking over Falcon's face distorted his features to some extent.

After getting the keys Falcon told Kemp to lie down on the floor; Falcon pushed him and Kemp fell on the floor.

Mr. Gordon opened the narcotics cabinet and, upon orders from the man with the stocking over his face, Mr. Gordon put 19 or 20 bottles of narcotics in a bag. Falcon took the bag, ordered Mr. Gordon to lie down and after a while he left.

Miss Matijevich, an employee, was in the back room and a man with a gunmetal colored stocking on his face pushed a mahogany-handled knife with a 6-inch blade against her ribs and said, ''I'll show you what I'm doing at the register.'' Miss Matijevich, thinking it was a Halloween prank, put her hand on his shoulder. The man jerked her arm out of place and cut her arm with the knife and asked for the money. He cut her arm again and took all the money from the register. He already had the day's receipts. He led her and a customer to the back room and ordered them to get down. There was another man in back with a blackish-blue gun who also had a gunmetal colored stocking over his face. The smaller of the two men was wearing a light colored sweater with pink and green blots on it. Both men were wearing white knit gloves.

At about 9:35 a.m. on December 6, 1965, Miss Matijevich and Miss Lee were working in the pharmacy. A man came around and Miss Matijevich said, ''Oh, not again,'' and the man said, ''Yes, this is a holdup.'' The man was wearing the same kind of a black mask as during the prior holdup.

Miss Lee opened the register, the man was waving a gun, the man took the money, and after finding out there was no more money, Miss Lee was ordered to lie down on the floor. Miss Matijevich was led to the narcotics locker and the men said they wanted morphine and Dilaudid. Miss Lee told them they had no more. The two men appeared to be the same men as those who were in the pharmacy on October 30, and the gun looked the same. The telephone rang and the taller man took the phone off the hook, replaced it, and they left. Miss Lee got a glimpse of the second man. The first wore a dark stocking over his face and the second wore a tan stocking.

Mrs. Leyba lived in an apartment at 13921 South Normandie Avenue in Gardena on October 30, 1965. On December

6, 1965, she lived with her husband, defendant Falcon (her cousin), and defendant Barrett. In the bedroom there was a bureau which had six drawers, three side by side. Mrs. Leyba and her husband used four of the drawers. Falcon was assigned to the second or third drawer on the right and defendant Barrett had the third drawer on the left. The apartment was located across the street from the pharmacy in question. On Halloween Mrs. Leyba, while shopping, heard of a robbery at the pharmacy. She went to the pharmacy, went home, went to the kitchen to prepare a meal, and could not find her black steak knife. It had a 6" blade and was about 11" long. She had last seen the knife that morning. A half an hour later the defendants returned and she asked them if they had seen the knife; they said they had not. They were carrying a brown bag rolled up in a sweater.

Police Officer Burton and Detectives Purcell and Peck went to the Leyba residence at about 5:40 p.m. on January 6, 1966. Falcon had already moved out. Mrs. Leyba and her husband were at home and Barrett was not at home. The officers were admitted to the apartment, and they asked the Leybas for permission to search. Permission was granted and Mrs. Leyba was present during the search of the bedroom. Mrs. Leyba told the officers that Falcon had been living there, that they had a quarrel and he had moved out. She did not say that either of the two men had property at her residence. Mrs. Leyba observed the officers going through the dresser and she thought she observed the officers remove a package of letters from the dresser drawer which had been assigned to Barrett. In this drawer, in a paper bag beneath some articles of clothing, were found a gun, six bottles, five bullets, and a hypodermic kit. The search also uncovered white gloves, and parts of two stockings. Mrs. Leyba was not sure whether a sweater which belonged to her husband, and which Falcon and Barrett had occasionally borrowed, was hanging in the closet or was removed from the drawer assigned to Barrett.

Officer Burton recalled that the gun, five bullets, and hypodermic kit were found in a paper bag beneath some articles of clothing in the center or third drawer down of a six-drawer dresser, on the left-hand side. White gloves were in the top drawer and a black stocking was on the shelf in the hall.

Officer Burton had a conversation with Barrett on January 10, 1966, at the sheriff's department. He first advised Barrett that he had the right to remain silent, that he had the right to the services of an attorney prior to making any statements,

and that any statements he made could be used in court against him. Officer Burton asked Barrett if he understood these rights and Barrett said he did.

Officer Burton exhibited the items to defendant and Barrett was asked to relate any involvement in robberies which had occurred in Gardena. Barrett asked how many ''jobs'' or ''counts'' were going to be filed against him and Officer Burton said about four. Officer Burton explained that he was speaking of the robberies at the Union Pharmacy and Barrett said he was involved in two robberies, possibly using the words, ''I am only good for two.'' Barrett said there was no need of denying his implication as identification had been made and the police had some of the articles. He was asked to relate further information regarding the crimes, and he said he would have to contact his partner and his attorney. Barrett made the statements freely and voluntarily.

Officer Burton first saw the sweater when Mrs. Leyba brought it to him at the police department several days after the search.

Miss Matijevich went to two lineups, one in Gardena and one in East Los Angeles. She did not see Falcon in the lineup in Gardena, but picked out a person who was not either of the defendants. There was one person in this lineup.

Mr. Kemp went to the Gardena police department for identification of one man and did not identify that man as the person he had seen at the pharmacy. He later went to a lineup in East Los Angeles with Miss Matijevich and Elaine Lee. There were five or six men in this lineup and he identified one man, Falcon.

Miss Matijevich recalled that there were four people in the lineup in East Los Angeles. She identified Falcon and Barrett by their actions and their height. The actions which made them identifiable were that they were quick and sharp about their speech and they were very nervous types.

The defense presented no evidence. Several briefs have been filed on behalf of the defendants, including briefs by counsel, and several briefs by Falcon in propria persona.

I

Falcon contends that he and Barrett were held beyond the period set forth in Penal Code section 825 before being arraigned and taken before a magistrate. ▮ We have been unable to find anything in the record to support this contention and matters not shown by the record will not be con-

sidered on appeal. ██ Furthermore, a delay in arraignment in violation of Penal Code section 825 does not require reversal, unless the delay prevented a fair trial, affected the outcome of the trial, or defendant suffered prejudice. (*People* v. *Wilson* (1963) 60 Cal.2d 139, 154 [32 Cal.Rptr. 44, 383 P.2d 452]; *People* v. *Boone* (1967) 252 Cal.App.2d 313 [60 Cal.Rptr. 275].) Nothing of that sort appears here.

## II

Defendants contend that the reading to the jury of allegations as to defendants' prior felony convictions constitute error. Defendants argue that it is even more unfair where the two defendants had a single trial, since, even if one defendant admitted his priors, he could be prejudiced by the reading to the jury of the prior convictions of the defendant that did not admit the priors. ██ It is clearly the law that there is no error where the trial judge reads the allegations of defendant's prior felony convictions where defendant denys the prior convictions. (*People* v. *West* (1967) 253 Cal.App.2d 348, 355 [61 Cal.Rptr. 216]; see *Spencer* v. *Texas* (1967) 385 U.S. 554 [17 L.Ed.2d 606, 87 S.Ct. 648].) Further, the jury was instructed to disregard the alleged prior convictions in the determination as to the guilt or innocence of each defendant of the crimes presently charged.

## III

██ Defendants argue that the fruits of the search were unlawful in that Mrs. Leyba had no authority to give permission to the officers to search furniture occupied by defendants.

However, failure to raise this issue below precludes raising this on appeal.

## IV

Defendant Falcon contends that the admission into evidence of the gun, the bottles and other items constituted error. Defendant Falcon contends that no proper foundation was laid for their introduction, and no evidence was offered to show the bottles had held narcotics.[1] ██ Material and relevant evidence which is technically incompetent and inadmissible under exclusionary rules, including lack of foundation, will be considered in support of the judgment if offered and received without objection or motion to strike. (See

---

[1] Mr. Gordon said that he could not definitely identify the bottles and stated that since the labels had been removed he could only say that the bottles might have been the ones taken in the robberies.

*Fishel* v. *F. M. Ball & Co., Inc.* (1927) 83 Cal.App. 128, 132 [256 P. 493].) Further, in response to defendant's contention that the gun was inadmissible, Mr. Kemp, Mr. Gordon and Miss Matijevich said that the gun entered into evidence resembled the gun held by the robber, and it was found in the premises in which defendants had resided.

Defendant Falcon points out the conflict in Mrs. Leyba's testimony as to where the items uncovered by the search had been located. It is for the trier of fact to determine the credibility of witnesses and conflicts in Mrs. Leyba's testimony cannot be considered by us.

## V

 Defendants assert that the admission of statements made by Barrett while in custody was error in that Barrett was not warned of his rights. Defendant Barrett was warned of his constitutional rights as required by *People* v. *Dorado* (1965) 62 Cal.2d 338, 353-354 [42 Cal.Rptr. 169, 398 P.2d 361]. The warnings set forth in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R. 3d 974], apply only to trials commencing after June 13, 1966, and are not applicable here.[2] (*Johnson* v. *New Jersey* (1966) 384 U.S. 719 [16 L.Ed.2d 882, 86 S.Ct. 1772]; *People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

 Falcon also asserts that he was not warned of his rights. Since Falcon made no incriminating statements any failure of the police to warn him of his rights is not prejudicial. (*People* v. *Boone, supra* (1967) 252 Cal.App.2d 313, 334.)

## VI

 Falcon asserts that the admission of the statements by Barrett in a joint trial was prejudicial error as to Falcon. *People* v. *Aranda* (1965) 63 Cal.2d 518, 530 [47 Cal.Rptr. 353, 407 P.2d 265], held that a trial court may ". . . permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice as to the declarant. By effective deletions, we mean not only direct and indirect identifications of codefendants but any statements that could be employed against nondeclarant codefendants once their identity is otherwise established.''

Prior to the trial, the prosecution had indicated that it

---

[2] The trial commenced on May 25, 1966.

intended to offer evidence of Barrett's conversation with Officer Burton, in which he had admitted guilt of two robberies but had refused to admit anything more until he had talked to his attorney and "his partner." Defendant Falcon moved for a separate trial. In the course of the argument on that motion it was disclosed that, in response to further questions, Barrett had indicated that he meant Falcon by the reference to "his partner." The prosecutor assured the court that the latter portion of the conversation would not be offered and, on that assurance, the motion for a separate trial was denied. The assurance was followed at the trial, Officer Burton testifying only to the reference to "his partner," but not to the identification of the partner.

Defendant Falcon contends that, even though the portion of Barrett's statement which identified Falcon as the "partner" was not put into evidence, still the reference to a "partner" was prejudicial. We agree. Clearly, the reference was to the crime partner involved in the holdups and whose existence was shown by the testimony of the victims. There is in evidence, also, the Leyba testimony which showed that Barrett and Falcon had both lived with the Leybas and had used the same bureau. The probability that, in light of this other testimony, the jury would have deduced that Barrett meant Falcon when he talked about a "partner" is almost overwhelming.

In *People* v. *Lara* (1967) 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202], both defendants in a joint trial had confessed. The Supreme Court describes the two confessions in the following terms: "Alvarez' confession to the police named Lara as his partner in crime. Although the latter's confession did not mention Alvarez by name, it referred to him consistently as 'this other person'; in the light of other evidence in the case identifying Lara as one of the two persons involved in the shooting, this allusion amounted to an equally damaging implication by necessary inference. The same reasoning applies to Alvarez' statement to Meza that he and 'his buddy, Tony,' had shot and killed a fellow who had given him a ride home earlier that morning. On the other hand, no implication of Alvarez appears in Lara's statement to his girl friend that 'me and some other ones' shot the victim, or in his statement to his sister that 'Him and some boys' committed the crime. [Citation.]" (67 Cal.2d 365, 392, fn. 24.) It held that the admission of the confessions, under these circumstances, violated *Aranda*, but that the error was nonprejudicial in the

light of the fact that each defendant's own confession incriminated the maker and in light of the other evidence of guilt. In the case at bench, there was no confession from Falcon, so that the admission of Barrett's statement, if error, was necessarily prejudicial. (*Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620].) It will be noted that the Supreme Court in *Lara* draws a distinction between the confession which referred to "me and some other ones" or to "Him and some boys"—thus suggesting a plurality of co-conspirators—and the confession which referred to "this other person"—thus indicating a single associate. It is the latter situation which is before us and, as to it, the language of the Supreme Court is here equally applicable: ". . . in the light of other evidence in the case identifying Lara [Falcon] as one of the *two* persons involved in the shooting [burglaries], this allusion amounted to an equally damaging implication by necessary inference." (*People* v. *Lara, supra* (1967) 67 Cal.2d 365, 392, fn. 24.)*

## VII

Defendant Falcon alleges that permitting the investigating officer to remain present in the courtroom after other witnesses were excluded pursuant to a defense motion was error. The matter of exclusion of witnesses is in the sound discretion of the court. (*People* v. *King* (1962) 199 Cal.App. 2d 333 [18 Cal.Rptr. 624].) Further, the defendants did not show they were prejudiced. In *People* v. *White* (1950) 100 Cal.App.2d 836, 838 [224 P.2d 868], defendant claimed that the trial court abused its discretion in permitting the investigating deputy sheriff to remain at counsel table when other witnesses were excluded. The *White* court held defendant did not show how he was prejudiced and there was no error.

## VIII

Defendant Falcon contends that he and Barrett were entitled to counsel during the lineup (*Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]), and that their privilege against self-incrimination was violated. The courts have refused to apply the *Gilbert-Wade* rules retroactively (*Stovall* v. *Denno* (1967) 388 U.S. 293, 296 [18 L.Ed.2d 1199, 1203, 87 S.Ct. 1967]; *People* v. *Feggans* (1967) 67 Cal.2d 444 [62 Cal.Rptr. 419, 432 P.2d

* (Italics and bracketed words added.)

21]), and defendant was not entitled to counsel during the lineup. ▮ Further the lineup procedure is not violative of the privilege against self-incrimination. (*United States* v. *Wade, supra* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *People* v. *Boone, supra* (1967) 252 Cal.App.2d 313.)

Falcon also contends that had he been out on bail he would not have had to submit to the lineup. It is clear that defendant would have been required to submit to identification, whether on bail or not. There is nothing in the record to show that the lineup was unfairly conducted.

### IX

▮ Defendants contend that they were not sufficiently identified, pointing out certain inconsistencies in Miss Matijevich's testimony. Strengths or weaknesses of identification, incompatibility of or discrepancies in testimony, uncertainties of witnesses in giving testimony, are matters for the jury in the first instance, and the trial court on a motion for new trial, and unless it can be said as a matter of law that there was no evidence to support the conviction, we cannot disturb the judgment. (*People* v. *Zurica* (1964) 225 Cal.App.2d 25, 31 [37 Cal.Rptr. 118]; *People* v. *Shaheen* (1953) 120 Cal.App.2d 629, 636 [261 P.2d 752].) ▮ Further, the fact that Miss Matijevich did not use facial features for identification was not improper. Identification may be sufficient when such identification relies on size, appearance, talk, walk and voice. (*People* v. *DeWitt* (1950) 98 Cal.App.2d 709, 714 [220 P.2d 981].)[3]

▮ Defendants say that Mrs. Leyba's testimony was suspect because she was trying to protect her husband. Credibility of witnesses is for the trier of fact. Falcon contends that Mrs. Leyba's testimony concerning the missing knife was error. Any discrepancy regarding the color of the handle of the knife, and uncertainties as to dates, go to the weight of the testimony and not to its admissibility. (See *People* v. *DuBont* (1965) 235 Cal.App.2d 844, 849 [45 Cal.Rptr. 717].)

### X

▮ Defendants contend that the prosecutor committed misconduct in presenting evidence of fingerprint exemplars without relating this evidence to the crimes charged. It is clear that these were secured and offered as part of the proof

---

[3]Defendant says Miss Matijevich's testimony is inherently improbable. Clearly there is no physical impossibility or apparent falsity. (See *People* v. *Barnett* (1958) 159 Cal.App.2d 22 [323 P.2d 96].)

of the alleged prior convictions. When the records of the convictions were offered, it was stipulated that they referred to the defendants on trial, making the use of the fingerprint exemplars unnecessary. We cannot say, since the priors had theretofore been denied, that the prosecutor was wrong in preparing and presenting his case on the assumption that that position would be adhered to; there is nothing to show that he was required to anticipate that a change in tactics would make this link in his case unnecessary.

Defendants also claim that the prosecution knowingly introduced false evidence. There is nothing in the record before us to support that charge nor is there anything to support the claim that there was collusion between Mrs. Leyba and the prosecutor.

## XI

Other errors are urged by Falcon, but, since the judgment must be reversed for the reasons above given, they need not be discussed, since they involve matters which, even if error, are not likely to recur on a retrial.

## XII

It is claimed that it was error to impose consecutive sentences, in the light of the provisions of section 669 of the Penal Code. But that section applies only to express life sentences and not to indeterminate sentences even though such sentences have a maximum term of life. (*People* v. *Shaw* (1965) 237 Cal.App.2d 606 [47 Cal.Rptr. 96]; *People* v. *Kostal* (1958) 159 Cal.App.2d 444, 453-455 [323 P.2d 1020]; see, also, *In re Quinn* (1945) 25 Cal.2d 799 [154 P.2d 875].)

The purported appeals from the orders denying new trials are dismissed. As to defendant Falcon, the judgment is reversed. As to defendant Barrett, the judgment is modified by striking therefrom the findings that such defendant was armed with deadly weapons within the meaning of Penal Code section 12022 at the times of the commissions of the offenses charged and found in counts I and II. In all other respects the judgment as to defendant Barrett is affirmed.

Jefferson, J., concurred.

FILES, P. J.—I concur in all except the reversal of Falcon's conviction.

I cannot see how Barrett's mention of "his partner" could incriminate Falcon. All of the evidence showed that these rob-

beries were committed by two men working together. His saying so incriminated no one. Barrett's confession gave no hint as to who the partner was.

*People* v. *Lara,* 67 Cal.2d 365 [62 Cal.Rptr. 586, 432 P.2d 202], presented the opposite situation. Meza had testified that Lara and Alvarez had been in the car when Mitchell drove him home. Lara's confession included the statement that "this other person" who had been in the car when they took Meza home had shot Mitchell. In that context the words "this other person" necessarily meant Alvarez.

Nothing comparable to that is involved in our case. Falcon's conviction should also be affirmed.