[Crim. No. 5667. Second Dist., Div. One. Oct. 21, 1957.]

THE PEOPLE, Respondent, v. JUDY CLOSE et al., Defendants; GEORGE WILLIAM ROBINSON, Appellant.

*Assigned by Chairman of Judicial Council.

David E. Agnew, under appointment by the District Court of Appeal, and Kindel & Anderson for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

FOURT, J.—This is an appeal from a judgment of conviction upon six counts of forgery under section 470 of the Penal Code, and from the denial of appellant's motion for a new trial.

In an information filed in Los Angeles County the defendants were charged with seven counts of forgery in that they did, in substance, on or about December 23, 1955, forge and counterfeit certain checks with intent to cheat certain persons and establishments named. Count V was dismissed upon motion of the prosecution.

Two prior convictions were alleged as to the appellant, one of conspiracy in the federal court in 1939, and one of forgery in the state court in 1949, with a prison term in each instance. Appellant's codefendant was charged with three prior convictions of forgery. Defendants each pleaded not guilty, and before the jury was impaneled admitted the prior convictions. A jury found both of the defendants guilty as to counts I, II, III, IV, VI and VII. Appellant's motion for a new trial was denied and he was sentenced to the state prison.

A substantial résumé of the facts is as follows: As to count I, Cliff Wakefield, a grocery store manager, was called to authorize the cashing of a check which appeared to be a check of Seaboard Finance Company drawn on the Security-First National Bank of Los Angeles, Olympic and Flower Branch, dated December 23, 1955, in the amount of $160, payable to Annie Lee Montgomery. Defendant Close presented the check,

and pursuant to her consent, her picture was taken for identification purposes. Close endorsed the check signing the name of the payee. The check was cashed and the money given to Close.

As to count II, Gordon Putnam, a store manager of a drug concern, was asked by defendant Close to authorize the cashing of a check on December 24, 1955. This check was in the amount of $204. Close related to Putnam that the check came from a loan she had made on her furniture. The check was cashed and returned from the bank dishonored. It was in form and appearance similar to the check mentioned in count I.

As to count III, Rose Linder, a bookkeeper at a store, was presented a check in the amount of $136 by Close on December 24, 1955. The check appeared substantially as the checks in counts I and II, and was cashed and returned dishonored.

As to count IV, Close presented a check in the amount of $154 to Beatrice Stone, an assistant credit manager in a clothing store. Stone asked for some identification and Close showed her a gas receipt which had the name of Annie Lee Montgomery thereon. Stone also called the Seaboard Finance Company and talked to someone there. The check was similar in appearance to the checks in counts I, II and III, and was cashed and returned dishonored.

As to count VI, on December 23, 1955, an assistant bookkeeper at a furniture store cashed a check which appeared to be similar to the checks in counts I, II, III and IV, in the amount of $122.31. This check was returned dishonored.

As to count VII, the manager at a women's apparel store had a check presented to him on December 24, 1955, in the sum of $148, which appeared similar to the checks in counts I, II, III, IV and VI. The manager could not definitely say that the person or persons who cashed the check were the defendants, but stated that both looked familiar to him.

Hazel Dixon, an employee of Seaboard Finance Company, who made out and signed checks for that company, testified that she examined a check of that company issued about December 1, 1955, in the amount of $8.79, payable to the order of John Lott. This check will hereinafter be referred to as the "legitimate check." This check was dissimilar to those checks mentioned in the various counts, in that the latter had the words and figures "Account No. 15" printed in the lower right portion thereof, whereas the legitimate check above referred to had the words and figures "Account No. 12" in

the lower portion thereof. Hazel Dixon testified that the account numbers corresponded to the numbers of the months of the year, and checks prepared for December would have the account number 12. Dixon's signature in blue ink, the color which was usually used, appears upon the face of the legitimate check under the words Seaboard Finance Company. Her purported signature appears in black ink correspondingly on the checks referred to in the various counts; however, the signature thereon is not the signature of Dixon and she did not issue such checks. The placement of the numbers on the checks in question was different than on the legitimate check. Furthermore, Dixon testified that she had never seen any checks of the company on the type of paper used in the checks in question.

Nelson Wells, a cleaning establishment employee, testified that he saw the legitimate check one morning in his place of business, in the possession of John Lott. Appellant was also present at that time. Lott asked Wells to cash the check, but Wells could not do so and appellant thereupon cashed it and took possession of it. A few days later Wells saw the legitimate check again at the same place, at which time appellant told Wells that the check had been lying in the seat of his car and that he had forgotten about it. Appellant presented the check to Wells for cashing, and Wells noted a difference in its physical condition in that the check was, on the latter occasion, dirty, soiled and wrinkled, and also that it had what appeared to be a small piece of tissue paper on the back thereof, and further, that there was a marking over the payee portion.

Officer Bowring of the Los Angeles Police Department, received a complaint through the forgery detail of Seaboard Finance Company with reference to the checks in question. He, with another officer, secured the legitimate check and the forged checks, and on January 6, 1956, went to Lott and to Wells and talked with them. The next day Bowring, with Officer Guzy, talked at Central Jail with the appellant, who was incarcerated at that time on a bookmaking charge. The officer told the appellant he was investigating the forgeries and wanted to know if appellant knew anything about the matter, to which the appellant answered that he did not know of the crimes and that he had had no checks lately. Appellant did admit to having a check from Seaboard Finance Company for about $8.00 or $9.00, and stated that he got it from a man named Nelson on Ascot Street; that he got a girl in a car to

cash it for Nelson; that he saw the check a day or so later when the girl brought it back to him and said she did not like it, and that he got the money back from Nelson for the girl. Appellant was then shown the legitimate check and was asked if that was the check he was referring to, and he said that it was.

The appellant said he did not see the second endorsement of Johnson on the legitimate check. It was then pointed out to the appellant that the legitimate check had a piece of paper stuck on the endorsement, and that this was put over another endorsement thereon; further, that the check had been in his possession and that Seaboard had been cashing a number of forged checks which were photographs or reprints of the legitimate check. Appellant was shown a picture of Close, as she held the check referred to in count I at the time she had cashed the same, and he was asked if he knew her, and he replied that he knew nothing of any forgeries but that the picture depicted someone he had been ''seeing around,'' known to him as Lillian Close. Close had been arrested at that time on a bookmaking charge and was confined in Lincoln Heights jail. Appellant said he knew nothing else about Close. The next day Officer Bowring and Officer Brown talked to Close at the jail. She had given a certain address while in the jail as being her residence, and at such time the officers checked the items in her property envelope at the jail and found several receipts in various names including Mrs. Mary Robinson, Mr. and Mrs. G. W. Robinson, Mary Robinson and George W. Robinson. Close signed a release with the jailer to permit the officers to take eight keys, which were included in her property at the jail. The next day the officers talked to appellant and informed him that in their previous talks he had not been telling the truth and that he and Lillian had been living as husband and wife. He then answered that she was just living at the same place but they were not married. The appellant denied any connection with the forgeries but admitted lying to the officers about other matters. The officers then said, ''Well, we'll just sign you out of jail. We'll go down and take a look.'' The appellant said, ''It's all right with me.'' Appellant was asked if he knew where and why he was going and he answered that they were going to his place to ''. . . look around to find out anything about these checks,'' and then said, ''All right. You won't find anything.''

The officers and appellant went to appellant's and Close's place of residence, opened the door with the key they had

secured from Close, and were told by appellant that the place was where he lived. Officer Brown found a notebook with a single page of paper. Appellant looked at it and said he did not know what it was, nor whose writing it contained. An exemplar of appellant's handwriting was secured and a comparison made with the handwriting in the notebook, and appellant then stated, in essence, that he didn't think the writing in the notebook was his. The officer then stated to appellant that one of the distinguishing features of the checks in question was the account number fifteen written thereon. On the notebook paper there were written words, one of which was misspelled, and there were the words ''make it look like it had been torn,'' and then underneath the word ''molder'' and the words ''make account No. 15''; the officer stated to appellant that this writing constituted instructions to the printer. The appellant was asked about it and he stated that he knew nothing of it. The officer insisted to appellant that appellant was not telling the truth. The officer asked appellant if he had not been spending quite a bit of money lately, and among other things betting $100 per race at the race track. Appellant replied that such was not the case, that he had only bet $100 per day, but that he had had some winnings. The notebook page and appellant were taken to the handwriting experts in the police department, where the appellant was again questioned and he answered, ''I'm not smart enough to do that.''

Officer Sloane, an expert in the questioned documents section of the police department, examined the checks and testified that the checks involved were transparencies of the legitimate check, and further he testified that the checks set forth in the various counts were in essence photographs of the legitimate check; further that the signature of Dixon had been photographed onto the checks in question. He also testified that in his opinion the appellant wrote the words in the notebook.

Appellant, in his brief on this appeal, assumes that it is a fact that the checks in question were counterfeited from the legitimate check and that he and Close occupied the same apartment.

■ Appellant contends that it was prejudicial error to receive in evidence the testimony of Officer Bowring, and that it was error to receive in evidence the notebook sheet because it was secured in an illegal and unreasonable search and seizure.

First of all, there was no objection to any of the testimony of Officer Bowring, and no motion was made to strike any of the testimony elicited. In *People* v. *Millum,* 42 Cal.2d 524, 528 [267 P.2d 1039], testimony as to certain accusatory statements was received without objection and it was held that the omission to object precluded the defendant from contending on appeal that error had occurred. The opinion refers to *People* v. *Stepp,* 82 Cal.App.2d 49, at page 51 [185 P.2d 417], in which it is said:

". . . Section 1870, subdivision 3 of the Code of Civil Procedure authorizes the admission of such testimony, and when it is admitted without objection, there is no error on the part of the trial court which may be urged on appeal. This rule has been universally accepted and is not now open to argument. The portion of the majority opinion in *People* v. *Simmons,* 28 Cal.2d 699 [172 P.2d 18] which relates to the matter of accusatory statements is an interesting discussion of the question of the admissibility of such testimony, but what is controlling here is found in the concurring opinion where it is said: (p. 723) 'It is conceded that on the trial defendant's counsel made no objection to the admission of the statements in evidence and no motion to strike or limit its effect was made. It is the rule that unless objection to it is made at the trial such evidence is beyond attack on appeal and may be considered in support of the judgment. (*People* v. *Lawrence,* 143 Cal. 148 [76 P. 893, 68 L.R.A. 193]; *People* v. *Peterson,* 66 Cal.App.2d 420 [152 P.2d 347]; 2 Cal.Jur. § 82, p. 263; 8 Cal.Jur. § 516, p. 500; 4 Cal.Jur. 10-Yr. Supp. (1943 rev.) 909.)' Directly in point is *People* v. *Peterson, supra,* where' it is said (p. 424): 'But the testimony under consideration here was introduced without objection and no motion to strike or to limit its effect so as to exclude its application to appellant was made. Even if it be assumed that said statement constituted inadmissible hearsay, it is to be considered on appeal in support of the judgment when no objection or motion to strike or to limit its effect was made in the trial court. (Citing cases.)' "

Appellant asserts, however, that the omission to object was not fatal because the conduct of the district attorney was such that it could not have been cured by any objection, and cited therefor *People* v. *Simon,* 80 Cal.App. 675, 679 [252 P. 758], *People* v. *Podwys,* 6 Cal.App.2d 71, 76 [44 P.2d 377], and *People* v. *Wells,* 100 Cal. 459 [34 P. 1078]. In our opinion, none of the cases cited is in point.

We are of the belief that even if the parts of the testimony of Officer Bowring which appellant contends were vulnerable to attack were omitted, a different result would be highly improbable. (See *People* v. *Watson,* 46 Cal.2d 818, 837 [299 P.2d 243].)

Assuming, however, that appellant is in a position to complain on appeal, his complaint is unavailing, for, as said in *People* v. *Morgan,* 87 Cal.App.2d 674, 681 [197 P.2d 413], "Where, as here, the denial was followed by the admission of special facts, the rule, that if the accused responds to the accusatory statements with a flat denial, there is no admission and nothing to be received in evidence, has no application here." (See also *People* v. *Simmons,* 28 Cal.2d 699, 712 [172 P.2d 18] ; *People* v. *Brown,* 71 Cal.App.2d 669, 674 [163 P.2d 85] ; *People* v. *Megladdery,* 40 Cal.App.2d 748, 784-785 [106 P.2d 84].) We think that the circumstances of this case bring it within the rule that the testimony is admissible in any event.

As to the receipt of the notebook containing the partial sheet of paper with the appellant's handwriting thereon, we believe that there was no error. At the trial the judge asked appellant's counsel if he wished to go over the exhibits, including the one in question, and counsel answered, "No, your Honor, I think they are all in order, really." There was no objection to their receipt in evidence. It is the general rule that where there is no timely objection to the reception of evidence in the trial court, objection is waived on appeal. (*People* v. *Millum, supra,* 42 Cal.2d 524, 526.) Failure to object to the reception of a matter into evidence constitutes an admission that it is competent evidence. (*People* v. *Velarde,* 45 Cal.App. 520, 528-529 [188 P. 59].)

A motion to strike was subsequently made after both appellant and Close had rested their case. That motion was denied. The courts have held that even as to matters having to do with searches and seizures, the admissibility of evidence will not be considered on appeal unless there has been a proper objection in the trial court. (*People* v. *Kitchens,* 46 Cal.2d 260, 262 [294 P.2d 17] ; see also *People* v. *Brittain,* 149 Cal. App.2d 201, 203 [308 P.2d 38] ; *People* v. *Williams,* 148 Cal. App.2d 525, 530-533 [307 P.2d 48].)

In *People* v. *Mendez,* 193 Cal. 39, 49 [223 P. 65], it was held that no error was committed when the trial court denied a motion to strike out an exhibit which had been received into evidence earlier with the express acquiescence of counsel even

though the exhibit would not properly have been admissible had there been an objection to it. (See also *People* v. *Caritativo,* 46 Cal.2d 68, 73 [292 P.2d 513].)

In this particular case, however, the appellant consented to the search. (*People* v. *Gorg,* 45 Cal.2d 776, 782 [291 P.2d 469]; *People* v. *Michael,* 45 Cal.2d 751, 753 [290 P.2d 852].)

We find no error in the record.

The judgment and the order denying a motion for a new trial are, and each is, affirmed.

White, P. J., and Drapeau, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 17, 1957.

---

*Assigned by Chairman of Judicial Council.