[Crim. No. 6493. Second Dist., Div. One. July 21, 1959.]

THE PEOPLE, Respondent, v. FRED PETTYJOHN, Appellant.

Fred Pettyjohn, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendant was accused of violation of section 11500 of the Health and Safety Code, in that he had in his possession certain narcotics, marijuana and amidone on or about March 13, 1958. Following entry of a plea of not guilty, trial by jury was duly waived, and by stipulation the cause was submitted to the court on the transcript of the testimony adduced at the preliminary examination, each side reserving the right to offer additional evidence, and to object to the introduction of any evidence contained in the aforesaid transcript. It was further agreed that all exhibits be deemed admitted in evidence subject to the rulings of the trial court on any objections made thereto.

After reading the transcript of the preliminary hearing, hearing additional evidence and the arguments of counsel, defendant was adjudged guilty as charged. His motion for a new trial was denied and he was sentenced to state prison. From the judgment and sentence, and the order denying his

motion for a new trial, defendant prosecutes this appeal. Since no appeal from a "sentence" is authorized, the attempted appeal therefrom must be dismissed (*People* v. *Gallardo*, 41 Cal.2d 57, 60 [257 P.2d 29]).

We consider the following a fair epitome of the factual background surrounding this prosecution.

Edgar P. Brown, a police officer of the city of Los Angeles attached to the Narcotics Division, testified he was in the vicinity of 24019 South Avalon Boulevard, at Wilmington in the city of Los Angeles at about 2:45 p.m. on the afternoon of March 13, 1958. Officer Brown was accompanied by his working partners, Officers King and Trembly, and the three were located about a block east of defendant's residence. They observed the latter drive up in an automobile. "We—and by 'we' I am referring to Sergeant Trembly, my partner, and Sergeant King, also my partner, and we at this time proceeded to his dwelling and apprehended the suspect, a short distance from his dwelling, approximately, oh, fifteen yards, I would say. At this time he was placed under arrest and returned to his address." Concededly, the arrest and ensuing search were made without warrants. As to the basis upon which the arrest and search was made Officer Brown testified:

"Q. By MR. FELDMAN (Deputy District Attorney) : Now, you say you arrested this man outside of his residence? A. Yes.

"Q. Why did you arrest him? A. We arrested him for suspicion of the Narcotic Act, a felony.

"Q. And on what was this suspicion based? A. The reason was due to the fact that we had received information from confidential informers in the past regarding the defendant's activity in using and selling narcotics.

"Q. And this source of information you had in the past, have you had other information from that source? A. We have had other information from two of the confidential informers.

"Q. Did this information in the past prove to be reliable? A. In both instances. Yes, sir.

"Q. And based on that information you made this arrest? A. We did.

"Q. And it would be detrimental to the interests of the public to disclose such source of information at this time? A. Definitely.

"MR. FEDER (Attorney for defendant): If your Honor please, I object to that. That is the witness' right to claim the privilege.

"Mr. Feldman: Your Honor, if I may be heard on that. Under Section 1881 ——

"The Court: *No one has asked him for the identity of the informer. Why don't you wait until the question is asked.*

"Mr. Feldman: *I am sorry.*" (Emphasis added.)

As to the manner in which the search of defendant's residence was conducted, Officer Brown testified on cross-examination by Attorney Feder, defendant's counsel, at the preliminary hearing:

"Q. Did you have a key? A. No, sir.

"Q. How did you gain entry? A. Force was used to gain entry through the door.

"Q. You broke the door down? A. Yes, sir. The door was broken down, yes, sir.

"Q. Now, you didn't have a warrant for the arrest of this defendant; is that correct, Officer? A. I did not.

"Q. And you didn't have a search warrant for the search of the house where this defendant resided; is that correct? A. I did not.

"Q. Or your fellow officers, so far as you know? A. To my knowledge, they did not."

Upon thus entering defendant's residence consisting of three rooms, the officers searched the same. Officer King called attention to a white rolled cigarette lying on a bookcase. He asked defendant what it was. The latter said he did not know. Officer Trembly removed two glass jars from a chair in the kitchen. One jar contained pills and the other a hypodermic outfit. The officers took the cigarette and jars into their possession and conducted defendant to the police station where he was interrogated. He denied knowledge of any of the items discovered in the house. He did state, however, that he lived there alone and that to his knowledge he had the only key.

The items were examined by an expert forensic chemist. In his opinion the cigarette contained marijuana. Various of the tablets or capsules contained amidone, and others contained morphine, demorol, and codeine, all narcotics. Other items included with these were cigarette papers, an eyedropper, two hypodermic needles and small gauge wire.

Officer Brown, who had been attached to the narcotics division more than three and a half years, and as such had seen the arms and marks left by the use of hypodermic needles, examined defendant at the location of his address and at the

police station. He observed such marks as those noted above on the arm of defendant.

Testifying more specifically with regard to the information which the police had obtained from confidential informers, Officer Brown stated that the first information concerning defendant was received approximately three months before the arrest. As Officer Brown remembered, he last received information concerning defendant two days before the arrest, on a Tuesday (the arrest occurring on the following Thursday). He received this latter information from one of the informers (sometimes referred to as informer Number 4) personally. A second informer had given information periodically concerning defendant, and the last information the officer received from this informer was perhaps a week prior. Information from the informer who spoke with Officer Brown on Tuesday had been acted on in the past many times by Officer Brown and other officers. It had resulted in arrests, in the finding of narcotics, and in two convictions that he recalled. When this informer spoke with Officer Brown on Tuesday, he said that defendant was still living "back of a bar" (adjoining his residence) and that he had some drugstore narcotics in his possession at that time. The informer also said he had "scored," that is, had purchased narcotics from defendant that day.

The informer who first gave information about defendant some three months prior to the arrest stated that the latter then lived at a different location, that when he (the informer) went in to "score" narcotics he would go up the alley and honk, defendant would come out, go back in, then in about 10 minutes come out with the "stuff"; and that defendant sold heroin by the grams. The police "staked" on this position several times but did not observe "exactly what they wanted" for an arrest. At that time the officers were not interested in users but wanted positive knowledge that narcotics were in the location. The officers received positive knowledge when two other informers verified that defendant was selling narcotics. As aforementioned, there was a fourth and the most recent informer, who gave information on the Tuesday prior to the arrest. The reason the police did not arrest defendant on Tuesday was because there was more than one narcotic peddler in the area and there were only three officers; they could not "get on information immediately."

The earliest informer in point of time stated to the police that he based his information on having bought narcotics from

defendant. The next informer stated that he did not purchase narcotics from defendant but had been in the latter's presence when sales took place. The third informer stated that he had purchased narcotics from defendant, as did the fourth informer.

Defendant did not testify in his own behalf nor offer any evidence in his defense.

As his first ground for reversal appellant urges that the trial court committed prejudicial error in not requiring disclosure of the names of the four informers referred to by Officer Brown when defense counsel requested the information.

In his brief appellant states that he ". . . is not so much contesting the fact of the other informers (1, 2, 3), since no arrest was made from that information, but rather the question is on informer number 4. . . ."

Appellant further urges that, "It is true that appellant is not charged with the selling of marijuana, but rather possession thereof; the point is that the arrest was due to the fact that informer number 4 had made a purchase and informed the arresting officers that Pettyjohn had in his possession narcotics. This made the informer a participant and therefore his identity should have been revealed."

We are satisfied that the charge of possession of narcotics of which appellant was convicted did not involve participation by the informer therein. In other words, we cannot perceive wherein informer Number 4 could be a material witness on the issue of appellant's guilt of possessing narcotics. While it is true that disclosure is not limited to the informer who participates in the crime charged nevertheless, the information elicited from an informer must be "relevant and helpful to the defense of the accused or essential to a fair determination of a cause" (*People* v. *McShann*, 50 Cal.2d 802, 808 [330 P.2d 33]) and before the prosecution is compelled to disclose his identity. As was said in the case just cited, "A mere informer has a limited role. 'When such a person is truly an informant he simply points the finger of suspicion toward a person who has violated the law. He puts the wheels in motion which cause the defendant to be suspected and perhaps arrested, but he plays no part in the criminal act with which the defendant is later charged.' (*People* v. *Lawrence, supra,* 149 Cal.App.2d at 450.) His identity is ordinarily not necessary to the defendant's case, and the privilege against disclosure properly applies. When it appears from the evidence,

however, that the informer is also a material witness on the issue of guilt, his identity is relevant and may be helpful to the defendant. Nondisclosure would deprive him of a fair trial.''

██ As was said in *People* v. *Williams*, 51 Cal.2d 355, 358 [333 P.2d 19], the existence of the privilege of nondisclosure depends on the ''materiality of the informer's identity to the defense.''

██ Recently, the Supreme Court of the United States in a narcotic case (*Roviaro* v. *United States*, 353 U.S. 53, 62 [77 S.Ct. 623, 1 L.Ed.2d 639] had this to say: ''The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.'' ██ We are satisfied that in the instant case, the right of appellant to prepare his defense to the charge of possession of narcotics could not have been prejudiced by the nondisclosure of informer Number 4.

██ Furthermore, the record reveals that no appropriate objection was made in connection with nondisclosure of the identity of the informers, nor was any motion made to strike any testimony on that basis. ██ *Priestly* v. *Superior Court*, 50 Cal.2d 812, 819 [330 P.2d 39], is authority for the statement that when the prosecution seeks to show reasonable cause for a search by testimony as to communications from an informer, his identity must be disclosed in proper cases when the defense seeks disclosure of such testimony ''must be struck on proper motion of the defendant.''

██ At the preliminary examination no objection was made on the ground of unlawful arrest or illegal search and seizure when the narcotics exhibits were received into evidence. At the trial there was in effect a motion to suppress, but it was manifestly limited in nature. The grounds were that the arrest had occurred at a distance from the dwelling and that the information received by the police was ambiguous: ██ ''. . . The courts have held that even as to matters having to do with searches and seizures, the admissibility of evidence will not be considered on appeal unless there has been a proper objection in the trial court.'' (*People* v. *Close*, 154 Cal.App.2d 545, 552 [316 P.2d 1019].) And, in *Coy* v. *Superior Court*, 51 Cal.2d 471, 473 [334 P.2d 569], we find the following language:

''In the present case no motion to strike the officer's testimony was made after the identity of the informer was refused, and neither in his objection to the introduction of the narcotics in evidence nor by argument elsewhere in the record did de-

fendant indicate that he was relying on the refusal to identify the informer to establish the illegality of the arrest and search. . . . No undue burden is placed on the defendant by requiring him to make a motion to strike when the basis for excluding evidence theretofore properly admitted becomes apparent, and there is no basis for departing from the settled rule requiring such a motion . . . in the present situation.''

 Appellant next contends that the district attorney was guilty of prejudicial misconduct. This charge is predicated on the testimony of the chemist that in his examination of the package marked People's Exhibit 1 he found a marijuana cigarette, capsules of amidone, other tablets containing morphine, demorol, codeine, as well as other miscellaneous items including two hypodermic needles. At the preliminary examination appellant moved to strike out the testimony of the chemist regarding codeine, demorol and morphine on the ground that, ''The only allegation in the complaint is possession of marijuana and amidone.'' The motion was denied. When Exhibit 1 was offered into evidence, defense counsel objected to any part of the evidence, ''except the marijuana and the amidone as alleged in the complaint.'' The court overruled the objection and stated, ''It doesn't go to the materiality. It might go to the question of knowledge, that the defendant knew that the narcotics named were there with a collection of several others. The objection is overruled. The envelope heretofore marked People's 1 for identification together with its contents will be received in evidence.''

 Appellant also challenges the good faith of the prosecutor in inquiring of Officer Brown whether the latter observed appellant's appearance, particularly in the area of the arms. The officer testified that he did, that he examined appellant at the location of his address and at the detective bureau, that he (the officer) had been attached to the narcotics division over three and a half years and as such had seen the arms and marks left by the use of hypodermic needles, and that he observed such marks on the arm of appellant. Defense counsel objected to further questioning along this line on the ground it had nothing to do with the charge. The court overruled the objection, stating that the matter might go to the question of guilty knowledge. The officer then testified that from his prior experience he had seen similar marks and that he formed an opinion as to what the marks on appellant's arm were. There was a further objection and the judge inquired

as to the purpose of the questioning. The deputy replied that it was to show the connection between the marks and the use of the hypodermic outfit which was found. The judge pointed out that appellant was merely charged with the possession of marijuana and amidone. The deputy district attorney said that because the evidence now showed a possibility of addiction he would withdraw the pending question.

While it is the rule that, generally, evidence of other crimes, or of general propensity toward crime, is not admissible, nevertheless, it is equally true that evidence of other crimes may be admissible to show the accused's knowledge of the narcotic nature of the substance which he is charged with having in his possession, or to show a common plan, scheme or design (*People* v. *Peete*, 28 Cal.2d 306, 319 [169 P.2d 924]; *People* v. *Sykes*, 44 Cal.2d 166, 170 [280 P.2d 769]; *People* v. *MacArthur*, 126 Cal.App.2d 232, 237 [271 P.2d 914]). As heretofore pointed out, it was upon the theory of knowledge on the part of appellant as to the narcotic character of the article with the possession of which he was charged that the court received in evidence the exhibit which included codeine, demorol and morphine. Since "knowledge of the narcotic character of the article possessed is an essential ingredient of the offense (possession) charged" (*People* v. *Winston*, 46 Cal.2d 151, 160 [293 P.2d 40]), the evidence was admissible on the theory of proving appellant's knowledge of the character of the contraband he was charged with possessing.

As to appellant's objection to testimony concerning the marks on his arms, as heretofore noted, the question in that regard was withdrawn by the prosecutor. It might be noted, however, that in *People* v. *Gin Hauk Jue*, 93 Cal.App. 2d 72, 74 [208 P.2d 717], the court held that in a charge of possession of narcotics, where evidence of an examination of the arms of the accused revealed evidence of the use of needles, "This evidence was clearly admissible as a circumstance showing 'possession' by defendant of the opium there found by the officers."

Appellant next contends that "Before the trial ended the trial judge was in the opinion that appellant was guilty and so stated his opinion, this was prejudicial and error." This complaint has to do with what occurred when appellant was reiterating his objection to the order of the court reopening the case for further evidence. During the ensuing argument the trial judge said, "I think, Mr. Umann (attorney for appellant), that the Court is for the purpose of ascertaining

and determining the truth. Here we have a situation where they had information, so stated in the preliminary transcript, regarding the defendant's use and sale of narcotics. *Now, to me that would mean that he was using and selling narcotics.* At least that was the information given. Now, it is probably true that that is all the officer was asked, and nothing further was asked of him at the preliminary hearing either by the District Attorney or by the Public Defender, but I think that these proceedings are here for the purpose not of being unduly technical but for the purpose of trying to find out what the facts are; so I see no reason in this case why the motion should not be granted. Had you requested permission to reopen, I would have granted you that permission." (Emphasis added.) Appellant takes exception to the above underlined remarks of the court. We fail to perceive any expression of opinion on the issue of appellant's guilt in the foregoing remarks of the trial judge. They merely indicate a desire on the part of the court to clear up an ambiguity in the officer's testimony. As the court stated, "It seems to be a little bit ambiguous, and I think the Court should have the facts." To warrant reversal of a judgment, the misconduct of a trial judge must be so definite and apparent as to leave little doubt that it has resulted in depriving the accused of a fair and impartial trial. The record in this case certainly discloses no such conduct.

 Finally, appellant asserts that the judgment and order must be reversed because his arrest and the subsequent search and seizure were unreasonable and in violation of section 19, article I of the Constitution of the State of California. He directs our attention to the testimony that he was arrested for "suspicion of the Narcotic Act," and that his arrest was ". . . based on information received from confidential informers regarding the defendant's activity in 'using and selling' narcotics." Appellant argues that, "there is no actual proof that appellant was actually using or selling narcotics and so where there was no evidence that would justify an implication that appellant was in the business of using and selling narcotics, there can be no probable cause for his arrest and where an arrest is illegal, the search is unreasonable."

 In this contention appellant cannot be sustained because reasonable cause for an arrest and seizure incident thereto, may be based upon information supplied by a single informer who is known to the arresting officer and who has been found to be reliable. In the instant case, in view of the established

past reliability of the informers, there was reasonable cause for the arrest and search (*People* v. *Richardson*, 51 Cal.2d 445, 448 [334 P.2d 573]; *People* v. *Soto*, 144 Cal.App.2d 294, 299 [301 P.2d 45]). As was said in *People* v. *King*, 140 Cal.App.2d 1, 6 [294 P.2d 972], "The term, reasonable or probable cause, has been defined: 'By "reasonable or probable cause" is meant such a state of facts as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain a strong suspicion, that the person accused is guilty' (*In re McCarty*, 140 Cal.App. 473, 474 [35 P.2d 568])."

 The information relied upon by the officers has heretofore been set forth in detail and it is unnecessary to here repeat it. Suffice it to say that it meets the test of the rule just quoted.

 It is next contended by appellant that since the information was received by the officers two days prior to their acting upon it and the consequent arrest of appellant, the officers had ample time within which to secure the issuance of a search warrant. That it must therefore, be assumed that, "The only reason that can be seen why they did not issue a warrant is that they did not have 'probable cause,' but rather made the arrest wholly in the assumption and suspicion that appellant had two days later possession of said narcotics." The matter of time and opportunity to secure a search warrant is not always determinative. Since, as we have held, the arrest of appellant was lawful, the law, in such cases, does "not purport to inhibit the right of law enforcement officers to conduct a *reasonable* search and seizure incident to a valid arrest" (*People* v. *Coleman*, 134 Cal.App.2d 594, 599 [286 P.2d 582]) (See also *People* v. *Winston*, 46 Cal.2d 151, 162, 163 [293 P.2d 40]; *Trowbridge* v. *Superior Court*, 144 Cal. App.2d 13, 23 [300 P.2d 222]).

 Appellant's final contention that, "there was no reasonable and probable cause for an arrest for possession of narcotics where the officers did not see the narcotics, and had no reasonable cause to know that appellant had in his home any narcotic until after they arrested and searched the premises" is unavailing because since an arrest may be made solely by reason of information communicated by a reliable informant, the search of appellant's premises and the seizure of the contraband was not illegal. (*People* v. *Montes*, 146 Cal.App.2d 530, 532, 533 [303 P.2d 1064].)

Appellant's reliance upon the case of *People* v. *Harvey*, 156 Cal.App.2d 516, 521 [319 P.2d 689], does not aid him

because its factual background is easily distinguishable from the evidentiary features of the case now engaging our attention. In the case just cited, there was a total absence of any evidence other than "of a very vague nature" received from a reliable informant, and the testimony of the officer relating to the arrest was as follows: "Well, we observed him for a few moments to see what he was up to. We saw that he was waiting for something or somebody, possibly a contact, and we thought we would place him under arrest." This is a far cry from the evidence presented in the instant prosecution.

The unauthorized appeal from the "sentence" is dismissed. The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.